## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | **Bankruptcy No. 14-22073-CMB** |
| | ) | |
| **CRAIG DEVON MURPHY,** | ) | **Chapter 7** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| **CRAIG DEVON MURPHY,** | ) | |
| | ) | |
| Plaintiff, | ) | **Adversary No. 14-2155-CMB** |
| | ) | |
| v. | ) | **Related to Doc. Nos. 70 and 79** |
| | ) | |
| **U.S. DEPARTMENT OF EDUCATION,** | ) | |
| | ) | |
| Defendant. | ) | |

*Appearances:*  Craig Devon Murphy, pro se

David Lew, Esq., for the United States of America, on behalf of the United States
Department of Education

### MEMORANDUM OPINION

The above-captioned adversary proceeding was commenced on July 15, 2014, by the

filing of the *Adversary Complaint of Plaintiff to Determine Dischargeability of Debt Pursuant to*

*11 U.S.C. §523(a)(8)(A)(i)(ii)(B)* ("Complaint").[1] An answer was filed by the United States.[2]

---

[1]    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core
matter pursuant to 28 U.S.C. §157(b)(2)(I), and the Court will enter final judgment. Furthermore, the
parties have identified this matter as a core matter upon which the bankruptcy court may enter final
judgment. *See Early Conference Certification and Stipulation*, Exhibit A to Doc. No. 35, at 2. Therefore,
this Court finds that the parties knowingly and voluntarily consented to adjudication by this Court. *See
Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015).

[2]    Other Defendants were named; however, the United States is the only remaining Defendant. On
September 4, 2014, Sallie Mae and SLM Corporation were dismissed as Defendants. On October 7, 2014,
Educational Credit Management Corporation was also dismissed as a party to this proceeding.

The matters presently before the Court are the (1) *United States' Motion for Summary Judgment* ("United States' Motion") and (2) *Plaintiff's Motion for Summary Judgment and Memorandum in Support* ("Plaintiff's Motion", collectively the "Motions").[3] *Plaintiff's Response Brief in Opposition to Defendant's Motion for Summary Judgment* was filed on April 20, 2015. On May 22, 2015, the *United States' Response to Plaintiff's Motion for Summary Judgment* and the *United States' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment* were filed. Oral argument on said Motions was held on July 28, 2015, and the matters were taken under advisement. Upon consideration of the foregoing and for the reasons set forth herein, this Court finds that the United States' Motion must be granted and Plaintiff's Motion must be denied.

## **Factual Background**[4]

On May 22, 2014, Plaintiff filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On July 15, 2014, Plaintiff commenced the above-captioned adversary proceeding seeking discharge of the debt resulting from a number of educational loans.

### Education and Employment

Plaintiff has an extensive educational and employment background. In approximately October of 1999, Plaintiff obtained his GED and voluntarily left Duquesne High School after completion of the ninth grade. *See* United States' Exhibit A, Plaintiff's Deposition Transcript

---

[3]     In support of their respective Motions, the parties submitted exhibits and cited to materials in the record. The Court notes that the United States' Motion was filed pursuant to the Undersigned's Procedures as it was accompanied by a Concise Statement of Material Facts, Memorandum of Law in Support, and Appendix. As Plaintiff is pro se, the Court is not requiring strict adherence to the posted procedures and will resolve the Motions as filed.

[4]     The facts set forth herein are undisputed unless otherwise indicated. The Court notes that, to the extent unsubstantiated statements were included in briefs and/or oral argument, such statements cannot be considered as evidence by the Court in resolving the instant Motions. *See Davis v. Nat'l Collegiate Trust (In re Davis)*, 526 B.R. 136, 142 (Bankr.W.D.Pa. 2015)(citing *Versarge v. Township of Clinton N.J.*, 984 F.2d 1359, 1370 (3d Cir.1993) and *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir.1989)).

(hereinafter, "U.S. Ex. A"), at 14-15. Thereafter, Plaintiff attended the Western School of Health and Business Careers in pursuit of a two-year degree. *See* U.S. Ex. A, at 16. Plaintiff did not, however, obtain his degree as he was terminated from the school around 2000 for a reason that is not set forth on the record. *See* U.S. Ex. A, at 16-17. Following this termination and prior to furthering his education, it is unclear whether Plaintiff was employed.

A few years later, Plaintiff once again pursued further education, and he obtained an Associate degree in paralegal studies from Duff's Business Institute in 2004. *See* U.S. Ex. A, at 19-20, 23-24; U.S. Ex. C.[5] Thereafter, Plaintiff sought and obtained full-time employment. *See* U.S. Ex. A, at 20-21. For approximately one year, Plaintiff was a customer service representative for Precision Response Corporation for which he was compensated approximately $20,000.00 per year. *See* U.S. Ex. A, at 20-21. Plaintiff was ultimately terminated from that position due to attendance. *See* U.S. Ex. A, at 21.

Overlapping this prior employment, Plaintiff was enrolled at Point Park University where he obtained a Bachelor's degree in Business in 2006. *See* U.S. Ex. A, at 22; U.S. Ex. C. During this time period, Plaintiff was employed by RGIS as an inventory auditor. *See* U.S. Ex. A, at 25. He was paid approximately $8.00 per hour; however, he voluntarily left that position after a few months. *See* U.S. Ex. A, at 26.

Subsequently, around August of 2006, Plaintiff obtained a position as a collections representative with NCO, which paid approximately $10.50 per hour. *See* U.S. Ex. A, at 27. He remained in that position until approximately October of 2006 when he voluntarily left that employment. *See* U.S. Ex. A, at 27-28. Plaintiff later obtained a temporary position with National Real Estate as a mortgage settlement agent. *See* U.S. Ex. A, at 28. He was paid

---

[5]    Initially, Plaintiff testified that he was enrolled in the Sanford Brown Institute. Subsequently, he corrected himself and testified that he attended Everest Institute. Plaintiff's degree, however, is from Duff's Business Institute. The name of the institution does not affect the Court's analysis.

approximately $12.00 per hour, and he remained in that position from January through March of 2007. *See* U.S. Ex. A, at 28. Shortly thereafter, Plaintiff obtained employment with K&L Gates as a legal records clerk where he received a salary of $22,000.00 per year. *See* U.S. Ex. A, at 29-30. In October of 2007, Plaintiff left that position to continue to further his education at Point Park University where he ultimately obtained a Master of Business Administration degree in 2009. *See* U.S. Ex. A, at 29-31; U.S. Ex. C.

Aside from some short-term positions, Plaintiff was mostly unemployed from approximately 2009 through 2011. *See* U.S. Ex. A, at 31-33. In 2011, Plaintiff obtained a position through a staffing agency at the law firm of Pietragallo, Gordon, Alfano, Bosick & Raspanti, LLP, as a records clerk for which he received approximately $13.00 per hour. *See* U.S. Ex. A, at 34-35. During this period of time, Plaintiff was able to save sufficient funds from his employment to purchase his three-bedroom home for $7,200.00 cash around December of 2012. *See* U.S. Ex. A, at 7-8, 55. Not long thereafter, around February of 2013, Plaintiff's employment at the law firm concluded. *See* U.S. Ex. A, at 35-36.

In 2013, Plaintiff obtained another degree from Point Park University, a Master of Arts degree in Organizational Leadership. *See* U.S. Ex. C. During September and October of 2013, Plaintiff was employed in a temporary position with Chevron for which he received $16.00 per hour as an oil and gas records technician. *See* U.S. Ex. A, at 41-42. Plaintiff then obtained a position with Staffmark in May of 2014; however, that employment ended within the month due to issues with a background check. *See* U.S. Ex. A, at 42-43. Plaintiff has not been employed since that time. *See* U.S. Ex. A, at 43.

Educational Loans

Plaintiff obtained a number of educational loans from 1999 through 2012, some of which were consolidated during that time. *See* Attachment 1 to U.S. Ex. B. The records from the National Student Loan Data System indicate that a disbursement on one of these loans was made as recently as February 1, 2013. *See* Attachment 1 to U.S. Ex. B. "As of July 30, 2014, the outstanding balance on Plaintiff's federal educational loans was $149,041.99, which represents $139,936.24 in principal and $9,105.75 in interest." *See* U.S. Ex. B, at ¶4. For nearly the entire life of the loans, the loans have been in deferment or forbearance. *See* U.S. Ex. B, at ¶7.

Plaintiff has not made any payments on his current educational debts nor has he applied for the Income-Based Repayment Plan ("IBR") or the Income-Contingent Repayment Plan ("ICR"). *See* U.S. Ex. A, at 75, 80; U.S. Ex. B, at ¶¶8-15.[6] Under the IBR, based upon Plaintiff's stated income in his Schedule I, Plaintiff's monthly payment would be $0. *See* U.S. Ex. B, at ¶11. According to Plaintiff, he saw no need to apply for such repayment options as he, instead, sought and obtained deferments and forbearances; furthermore, he does not intend to apply for either IBR or ICR. *See* U.S. Ex. A, at 80, 85.

Plaintiff's Current Circumstances

At the time he commenced this case, Plaintiff indicated in his Schedule I that he was unemployed with a total monthly income of $239.00, comprised of $50.00 in family support and $189.00 in government assistance. Although Plaintiff's Schedule J includes $2,163.00[7] of

---

[6]    Within Plaintiff's Motion and at oral argument, Plaintiff asserted that he made sporadic payments on educational loans; however, no evidence was provided to substantiate these allegations. Furthermore, these statements are contrary to Plaintiff's deposition testimony.

[7]    As pointed out in the *United States' Concise Statement of Material Facts*, although Plaintiff's Schedule J identifies the total of Plaintiff's monthly expenses as $1,516.00, the expenses listed actually total $2,163.00.

monthly expenses, as indicated at Plaintiff's deposition, this total includes expenditures which Plaintiff is not currently making, including $500.00 for home maintenance, $345.00 for vehicle payments,[8] and $685.00 for educational loan repayment. *See* U.S. Ex. A, at 62-63, 75. The remaining expenses total $633.00.

Within his Schedule I, Plaintiff indicated that he expected his income to increase within the year due to possible employment. Plaintiff submitted a long list of positions for which he has applied in the timeframe of 2004 through 2015, many of which are employment opportunities within the federal government. *See* Plaintiff's Ex. B. Within the last year, Plaintiff estimates that he has been on ten interviews. *See* U.S. Ex. A, at 58. In September of 2014, Plaintiff applied for a seasonal position, scheduled to last four to six months, with the Internal Revenue Service for which the annual pay was approximately $32,000.00. *See* U.S. Ex. A, at 55-56, 58. According to Plaintiff, he has no health problems or medical conditions that would prevent him from employment. *See* U.S. Ex. A, at 66. In sum, Plaintiff is a highly-educated, healthy, thirty-two year old man, who owns his home outright and has no dependents.

## Summary Judgment Standard

Motions for summary judgment are governed by Fed.R.Civ.P. 56, made applicable to adversary proceedings by Fed.R.Bankr.P. 7056. Pursuant to Fed.R.Civ.P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Initially, the burden rests on the moving party and then shifts to the non-moving party if the movant meets its burden. A party must support its position by citing to materials in the record, such as depositions, documents,

---

[8]      The Court notes that, despite listing his total income as only $239.00 in Schedule I, at the time of filing his voluntary petition, Plaintiff expressed his intention to retain his 2011 Toyota Camry and reaffirm that debt. *See Chapter 7 Individual Debtor's Statement of Intention*, Case No. 14-22073, Doc. No. 1.

admissions, and interrogatory answers. *See* Fed.R.Civ.P. 56(c)(1). To preclude summary judgment, the mere existence of a factual dispute is insufficient; rather, the dispute must be with respect to a *material* fact, i.e., a fact that would impact the outcome of the litigation under applicable substantive law. *See Volek v. Redevelopment Auth. of the Cnty. of Fayette*, 24 F.Supp.3d 473, 482 (W.D. Pa. 2014). Where a *defendant* moves for summary judgment, that party need not refute each element of the plaintiff's claim; instead, the defendant is only required to demonstrate the absence or insufficiency of evidence in support of at least one requisite element of the plaintiff's claim. *Id.* at 483. With this standard in mind, the Court will analyze the pending Motions in accordance with the applicable law.

## <u>Analysis</u>

Within the Complaint, Plaintiff seeks a determination that his educational debts are dischargeable pursuant to 11 U.S.C. §523(a)(8), which provides as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> > (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--
> > (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> > (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> > (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

*See* 11 U.S.C. §523(a)(8). In this case, the parties dispute whether the inability to obtain a discharge of educational loan debt will result in an undue hardship on the Plaintiff.

In determining whether an "undue hardship" exists under §523(a)(8), this Court is bound to follow the standard set forth in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987), which was adopted by the Court of Appeals for the Third Circuit in

*Pennsylvania Higher Education Assistance Agency v. Faish* (*In re Faish*), 72 F.3d 298 (3d

Cir.1995). The test set forth in *Brunner* consists of the following three elements:

> (1) that the debtor cannot maintain, based on current income and expenses, a
> "minimal" standard of living for [debtor] and [debtor's] dependents if forced to
> repay the loans; (2) that additional circumstances exist indicating that this state of
> affairs is likely to persist for a significant portion of the repayment period for
> student loans; and (3) that the debtor has made good faith efforts to repay the
> loans.

*See Faish*, 72 F.3d at 304-305 (quoting *Brunner*, 831 F.2d at 396). Each of these elements must

be established individually by the debtor in order for discharge to be granted. *See Faish*, 72 F.3d

at 306. Significantly, the Court of Appeals for the Third Circuit characterized the *Brunner* test as

"the definitive, exclusive authority" for determining "undue hardship" and further mandated that

"[e]quitable concerns or other extraneous factors not contemplated by the *Brunner* framework

may not be imported into the court's analysis to support a finding of dischargeability." *Id.*

Accordingly, for the purpose of resolving the pending Motions, this is the applicable governing

law pursuant to which this Court must decide if a genuine dispute exists with respect to a

*material* fact.[9] As the *Brunner* test requires that a debtor meet his burden as to each of its three

prongs, a debtor's inability to demonstrate one of the prongs is fatal to a request for

dischargeability.

---

[9]     Plaintiff dedicated a significant portion of his motion and oral argument emphasizing his belief
that the *Brunner* test should no longer be applied and advocating the application of a totality of the
circumstances test and/or the means test analysis to determine undue hardship. While this Court reviewed
the Plaintiff's Motion and submissions in their entirety, the Court will not address herein every single
argument and allegation made by Plaintiff. This Court is bound to apply the *Brunner* test, and relevance is
determined by, and limited to, relation to the three prongs of the *Brunner* test. While Plaintiff contends
that the test is outdated, the Third Circuit continues to adhere to the test adopted in *Faish. See Lepre v.
United States Dep't of Educ.* (*In re Lepre*), 530 F.App'x 121 (3d Cir. 2013), *cert. denied*, 134 S.Ct. 525
(2013). Notably, however, based upon the undisputed facts of record, Plaintiff would fair no better under
the totality of the circumstances test which he contends should govern. This Court would reach the same
conclusion: the educational loan debt would nonetheless be nondischargeable.

Good Faith Efforts

Much of the parties' argument was dedicated to the third prong of the *Brunner* test, which asks whether the debtor has made good faith efforts to repay the loans. Although out of turn, the Court will begin its analysis with this inquiry. In order to demonstrate good faith, a debtor's financial plight must have resulted from factors beyond his reasonable control as opposed to his own willful or negligent conduct. *See Davis v. Nat'l Collegiate Trust* (*In re Davis*), 526 B.R. 136, 141 (Bankr.W.D.Pa. 2015). A court "must consider whether: (1) the debtor incurred substantial expenses beyond those required to pay for basic necessities; and (2) the debtor made efforts to restructure the loan before filing his or her bankruptcy petition." *Id.* Additional factors courts have considered are the ratio of a debtor's student loan obligation to his total unsecured debt and the amount of time between when the loan became due and when debtor sought a discharge. *See Goforth v. United States Dep't of Educ.* (*In re Goforth*), 466 B.R. 328, 341 (Bankr.W.D.Pa.2012). With these factors in mind, a court must determine whether a debtor has made good faith efforts to repay an educational loan from the date upon which the first loan payment became due to the date of the bankruptcy filing. *See id.* at 339.[10]

With respect to expenses, Plaintiff does not have a mortgage or pay rent as he was able to save $7,200.00 from earnings to purchase his home with cash in 2012. Plaintiff does own a vehicle, requiring monthly payments of $345.00. Based upon the remaining expenses identified

---

[10]     The Court notes that it is not entirely clear on the record when the first payments on the loans at issue became due. In reference to the relevant time period, the United States cites to the earliest of Plaintiff's current loans, which are loans from November of 2007. *See United States' Memorandum of Law in Support of Motion for Summary Judgment*, Doc. No. 71, at 8, 13 n.6. Meanwhile, at oral argument and within his Motion, Plaintiff appears to assert that the relevant timeframe is the past sixteen years, apparently relying upon the date when he first obtained an educational loan. *See Plaintiff's Motion for Summary Judgment and Memorandum in Support*, Doc. No. 79, at 38. Within Plaintiff's Exhibit A, the dates when certain loans entered repayment are provided; however, many of these individual loans were marked as paid in full through consolidation loans. As to the remaining loans identified in Plaintiff's exhibit, it appears that the earliest any of those existing loans entered repayment was 2012. Notwithstanding the foregoing, no evidence of payments was submitted, and the forbearances, deferments, and consolidations are matters of record.

on Schedule J, Plaintiff appears to live modestly without incurring substantial expenses beyond those required to pay for basic necessities.

Significantly, however, Plaintiff failed to maximize his income earning potential to demonstrate that the cause of his financial hardship is beyond his reasonable control. *See Davis*, 526 B.R. at 142 (finding that "although the Debtor maintains modest monthly expenses, her unexplained failure to maximize her income earning potential also evidences her lack of 'good faith' in repaying her student loans"). For example, on three occasions, Plaintiff voluntarily left employment. Notwithstanding the foregoing, Plaintiff asserts to the contrary and contends that he has vigorously sought employment opportunities. *See* Plaintiff's Motion, at 23. In support of his contention, Plaintiff submitted a long list of positions for which he applied in the timeframe of 2004 through 2015, many of which are employment opportunities within the federal government. *See* Plaintiff's Ex. B.[11] The fact that Plaintiff has applied to jobs for which he has not been hired does not establish that Plaintiff maximized his earning potential. Notably, with respect to some of the government positions, Plaintiff's own exhibit provides a "status" which has not been

---

[11]     Plaintiff submitted Exhibit D in support of his position that the United States cannot assert in this proceeding that Plaintiff possesses marketable employment skills as Plaintiff applied for a position with the Office of the United States Attorneys but was not given an interview despite his qualifications. *See* Plaintiff's Motion, at 25. Based upon Exhibit D, it appears that in March of 2014 Plaintiff applied for a legal assistant position with the Department of Justice, Executive Office for U.S. Attorneys and the Office of the U.S. Attorneys in Pittsburgh, Pennsylvania. Aside from providing evidence of his application for the position, Exhibit D does not support Plaintiff's position that he is viewed as unemployable by the United States.

Similarly, Plaintiff submitted Exhibit C in support of his assertion that his attempts to obtain a position with the federal government have been unsuccessful mostly due to a hiring preference for veterans. *See* Plaintiff's Motion, at 23. Although Exhibit C provides evidence of one instance where the number of applicants eligible for this preference precluded Plaintiff's application from receiving further consideration, it does not establish that the preference is the reason that Plaintiff was not considered for any other position to which he applied. More significantly, it does not establish that Plaintiff is unemployable.

Furthermore, this Court notes but expresses no opinion on the effect this pending proceeding against the United States may have on Plaintiff's pursuit of employment with the federal government, especially with the Office of the United States Attorney.

clarified for the Court. In a number of instances, the status is marked cancelled, application incomplete, or minimum qualification requirements not met. *See* Plaintiff's Ex. B. Although Plaintiff is currently unemployed, he is highly educated with a lengthy employment history indicating that he is certainly employable. Plaintiff has not demonstrated that his current unemployment resulted from factors beyond his reasonable control.

In an effort to demonstrate good faith, Plaintiff established the steps he has taken to prevent default, including through obtaining deferments and forbearances. In addition, Plaintiff asserts that he has shown his good faith by consolidating some of his loans. Although not dispositive to the determination of good faith, a debtor's pursuit of loan consolidation is a component of the analysis as it may demonstrate that a debtor takes the obligation to repay seriously and that he is doing what he can to repay despite his circumstances. *See Fabrizio v. U.S. Dep't of Educ.* (*In re Fabrizio*), 369 B.R. 238, 245 (Bankr.W.D.Pa. 2007). Notably, as was the case in *Fabrizio*, consolidation fails to carry the burden under this prong where no payments have been made and the record does not demonstrate an intention to repay. *See id.* at 245-46. Accordingly, without more, Plaintiff cannot demonstrate good faith efforts to repay the loans by seeking deferments, forbearances, and consolidation.

In addition, courts have considered the failure to enroll in IBR or ICR as significant when such administrative programs would substantially reduce the debtor's monthly payment. *See Goforth*, 466 B.R. at 340. Furthermore, if certain requirements are met, then Plaintiff may qualify for cancellation of his outstanding debt after twenty-five years. *See* Attachment 2 to U.S. Ex. B. Here, Plaintiff has stated that he has no intention to participate in IBR despite the fact that it would reduce his monthly payment to $0. Plaintiff contends that, should he choose to participate in this repayment program and eventually qualify for cancellation of the debt, the

cancellation may result in a large tax burden. Plaintiff made no attempt to establish what this potential tax debt may be and provides nothing more than a suggestion that a debt, in some amount, may exist twenty-five years in the future. Based upon Plaintiff's employment history and education, Plaintiff's contention in this regard fails to take into account the likely reduction of the educational loan debt due to payments from future income. *Cf. Coco v. N.J. Higher Educ. Student Assistance Auth.* (*In re Coco*), 335 F.App'x 224 (3d Cir. 2009) (finding a debtor's decision to forgo enrollment in an income contingent repayment program reasonable where eventual cancellation of the debt would simply trade the student loan debt for a tax debt as debtor's financial circumstances and chronic medical problems were likely to continue indefinitely). Based upon the circumstances of this case, Plaintiff's argument is highly speculative and does not provide a reasonable basis for his refusal to enroll in these repayment plans.

Another consideration in the good faith analysis is the ratio of a debtor's student loan obligation to his total unsecured debt. *See Goforth*, 466 B.R. at 341. Where the student loan debt constitutes the majority of the debt, it is an indication that discharging the student loan debt was the primary motivating factor in filing for relief under the Bankruptcy Code. *Id.* In *Goforth*, the court found that a student loan debt representing 72% of unsecured debt is a high ratio weighing against a finding of good faith. *Id.* Likewise, in this case, the vast majority of Plaintiff's debt is student loan debt. The United States points out that, in his Schedules, Plaintiff calculated his total liabilities to be $172,176.20, of which $147,987.46 was represented to be educational loan debt. Accordingly, the United States contends that 85% of Plaintiff's debt arises from his educational

loans thus indicating a lack of good faith.[12] Although this ratio is not dispositive, it is a relevant factor for consideration. In this case, it is a further indication that discharge is not appropriate under the good faith analysis.

Furthermore, based upon the records submitted, the last disbursement on one of Plaintiff's educational loans occurred on February 1, 2013. The most recent degree obtained by Plaintiff was awarded to him on May 4, 2013. *See* U.S. Ex. C. The above-captioned adversary proceeding seeking discharge of all educational loan debt was commenced a little over one year after Plaintiff obtained his *second* Master's degree. Based upon the record, Plaintiff spent much of the time between the date he first obtained an educational loan and the filing of this bankruptcy case pursuing his education. In fact, Plaintiff was awarded degrees in 2004, 2006, 2009, and 2013. Plaintiff has not demonstrated a good faith effort to repay by seeking discharge of these loans after only recently completing his educational goals. Meanwhile, for nearly the entire life of the loans, the loans have been in deferment or forbearance.

Upon consideration of the foregoing relevant factors applied to the undisputed facts, Plaintiff failed to demonstrate good faith efforts to repay the loans at issue. Because each of the three prongs of the *Brunner* test must be established by a debtor in order to demonstrate undue hardship, Plaintiff is incapable of meeting his burden. Accordingly, the United States established entitlement to summary judgment as Plaintiff failed to respond with sufficient evidence to create a genuine dispute as to any material fact on the issue of undue hardship. The Plaintiff's educational debt is not dischargeable. The Court's analysis could conclude at this point;

---

[12]    The Court notes that the United States' calculation compares Plaintiff's *total* liabilities with the amount of educational loan debt; however, in *Goforth*, the court compared total *unsecured* debt with the student loan indebtedness. In this case, using the latter calculation results in an even higher percentage and does not change the analysis.

however, as there are alternative grounds for the Court's decision, the other two prongs of the *Brunner* test will also be addressed herein.

<u>Additional Circumstances</u>

The second prong of *Brunner* requires a debtor to demonstrate the existence of additional circumstances indicating that his current state of financial affairs is likely to continue for a significant portion of the repayment period. This has been characterized as a "demanding requirement" as a debtor must establish a complete incapacity to pay debts in the future for reasons beyond the debtor's control. *See Davis*, 526 B.R. at 145. Dischargeability is reserved for exceptional cases where there is a certainty of hopelessness as opposed to present inability. *See Brightful v. Pa. Higher Educ. Assistance Agency* (*In re Brightful*), 267 F.3d 324, 328 (3d Cir. 2001). Disabilities and/or impairments which prevent an individual from retaining employment are typically significant factors under this prong. *Davis*, 526 B.R. at 146. The evidence produced by a debtor must be definitive and demonstrate that the debtor's earning potential will not improve over time. *Id.* at 145-46.

The undisputed evidence in this case reveals that the Plaintiff is thirty-two years old, healthy, well-educated, and employable. Plaintiff's second Master's degree was awarded to him on May 4, 2013, approximately one year before the commencement of the bankruptcy case. In the interim, Plaintiff was employed by Chevron and Staffmark, although the latter position was terminated relatively quickly. Despite Plaintiff's submission showing his applications to various positions, the evidence is simply insufficient to meet the demanding requirement of this prong of the *Brunner* test. Significantly, although the Plaintiff provides a list of numerous positions for which he applied, it appears that these applications were made within the timeframe of 2004 through 2015. *See* Plaintiff's Ex. B. As detailed within the undisputed facts, Plaintiff was not

14

unemployed throughout that entire time period. In fact, Plaintiff held a number of different positions while he was pursuing his educational goals. Further, Plaintiff admits to voluntarily leaving certain positions during this timeframe. While Plaintiff may be attempting to show that he did not obtain particular employment, the evidence overwhelmingly demonstrates that he is employable. Plaintiff failed to produce even a shred of evidence to support a finding in his favor as to this prong of the *Brunner* test.[13] The undisputed facts demonstrate that Plaintiff is employable and that, with employment, his financial condition will likely improve.

Based upon the foregoing, there is no genuine dispute as to any material fact regarding Plaintiff's inability to present sufficient evidence to meet his burden under the second prong of the *Brunner* test. Accordingly, this provides an alternative basis upon which the request to discharge the student loan debt must be denied.

Minimal Standard of Living

As set forth above, the first prong of the *Brunner* test requires a debtor to demonstrate that, if he is forced to repay his educational loans, he cannot maintain a minimal standard of living. The concept of a minimal standard of living is flexible and dependent upon the particular circumstances of a case. *See Davis*, 526 B.R. at 144. An evaluation of the debtor's present income and expenses is required under this prong; however, in undertaking this analysis, "income and expenses should not be regarded as unalterable." *Id.* Thus, a court is permitted to consider whether it would be unconscionable to require a debtor to pursue additional income or

---

[13]     Plaintiff makes a number of assertions in an attempt to demonstrate the requisite additional circumstances under the *Brunner* analysis; however, these are no more than unsubstantiated statements which are not supported by any evidence. *See* Plaintiff's Motion, at 28 (asserting, *inter alia*, that he is unlikely to earn a salary in excess of $25,000.00 annually, that he will suffer chronic unemployment and underemployment due to the economy and outsourcing, and that prices of necessities will continue to increase).

reduce expenses. *Id.* Significantly, simply demonstrating "tight" finances is insufficient to meet the burden as to this prong. *Id.*

Overall, a review of Plaintiff's Schedule J indicates that Plaintiff's monthly expenses are not unreasonably excessive; however, they far exceed the amount of income identified on Schedule I. Notably, of the $2,163.00 of expenses listed, $1,530.00 of the payments are not actually being made, including the home maintenance payments of $500.00, vehicle payments of $345.00, and the educational loan payments in the amount of $685.00. In fact, Plaintiff has never made payments on these educational loans. Further, this amount could clearly be reduced based upon one of the repayment options available to Plaintiff. In fact, if Plaintiff were to enroll in IBR, his payment would be reduced to $0. Based on the facts of this case, Plaintiff's highly speculative argument that he may incur a substantial tax debt due to cancellation of debt in the future under a repayment plan does not provide a reasonable explanation as to why Plaintiff has not pursued such an administrative option in an attempt to reduce his expenses. Assessment of expenses, however, is not the end of the analysis. *See Davis*, 526 B.R. at 145 (holding that "[a]lthough, a review of the Debtor's expenses indicates that there is little room for her to further reduce or eliminate her 'cost of living' expenses, and all of those expenses appear reasonable, based on the current record, there nevertheless remains an opportunity for the Debtor to increase her income in an amount that could be used to repay her current student loan obligations").

According to Plaintiff's Schedule I, he is unemployed with a total monthly income of $239.00, in the form of food stamps and family support. Income, however, is not unalterable in this analysis. While Plaintiff alleges that he is unlikely to earn a salary in excess of $25,000.00, the statement is completely lacking evidentiary support. *See* Plaintiff's Motion, at 28. Further, the unsubstantiated statement is undermined by the fact that in September of 2014 Plaintiff

applied for a seasonal position with an annual pay rate of $32,000.00. Notwithstanding the foregoing, even if Plaintiff earned a salary of $25,000.00, he failed to demonstrate that he would not be able to maintain a minimal standard of living if he was forced to repay his student loans. Notably, based on an adjusted gross income of $25,000.00, Plaintiff's monthly payments on his educational loans would only increase from $0 to approximately $91.00. *See* U.S. Ex. B, at ¶12.

Furthermore, despite the snapshot of Plaintiff's financial circumstances provided by Schedule I, Plaintiff is highly educated and has demonstrated the ability to obtain various types of employment. Throughout the stages of his education, Plaintiff has obtained both long and short-term positions. On three occasions, Plaintiff voluntarily left employment. One of those positions was at K&L Gates, where Plaintiff was earning $22,000.00 annually in 2007, before he added two Master's degrees to his résumé. Prior to December of 2012, Debtor demonstrated his ability to earn more than what is necessary to meet his expenses as he was able to save at least $7,200.00, which he used to purchase a home. As recently as the fall of 2013, Plaintiff was earning $16.00 per hour. Although short-lived due to an apparent issue with a background check, Plaintiff obtained employment with Staffmark in May of 2014. Despite the issue with Staffmark, Plaintiff has held numerous positions, apparently without any issues resulting from background checks.

The evidence does not establish that Plaintiff is unemployable. Although Plaintiff may intend for the Court to view his income only as it is set forth in Schedule I, the Court's analysis is not limited in that respect. Therefore, in this case, based upon the record, it is certainly not unconscionable to require Plaintiff to pursue additional income. Plaintiff failed to establish that he cannot maintain a minimal standard of living under the first prong of the *Brunner* test. The

undisputed facts demonstrate to the contrary. Accordingly, judgment in favor of the United States could alternatively be granted on this basis as well.

<u>Conclusion</u>

Based upon the foregoing analysis, there is no genuine dispute as to any material fact regarding Plaintiff's inability to present sufficient evidence to meet his burden as to each of the three prongs of the *Brunner* test. Therefore, Plaintiff failed to establish undue hardship under 11 U.S.C. §523(a)(8), and the debt resulting from the educational loans is not dischargeable. Throughout these proceedings, the Court had the opportunity to observe Plaintiff on several occasions. Although for many the experience of appearing before a court pro se is daunting, Plaintiff appeared eloquent, well-prepared, highly competent, and articulate on each of these occasions. Plaintiff's education is evident in his presentation and filings. Discharging the student loan debt of a young, healthy, well-educated, employable debtor is not the purpose of §523(a)(8). Therefore, upon consideration of the *United States' Motion for Summary Judgment* and *Plaintiff's Motion for Summary Judgment and Memorandum in Support*, the responses, memoranda, exhibits, and argument, the Court finds that the United States' Motion must be granted and the Plaintiff's Motion must be denied. An Order will be entered consistent with this Memorandum Opinion.

Date: August 13, 2015

　　__/s/ Carlota M. Böhm_____
　　Carlota M. Böhm
　　United States Bankruptcy Judge

**MAIL TO:**

　　Office of the United States Trustee

　　David Lew, Esq.

　　Craig Devon Murphy
　　117 Friendship Street
　　Duquesne, PA 15110

FILED
8/13/15 12:54 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA